The STATE of Ohio, Appellee,

v.

FIELDS, Appellant.

[Cite as *State v. Fields* (1999), 136 Ohio App.3d 393.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No.. 74802.

Decided Dec. 20, 1999.

---

*Saleh S. Awadallah,* Assistant Prosecuting Attorney, for appellee.

*Vance Fields,* pro se.

PATTON, Judge.

Petitioner Vance Fields pleaded guilty to one count of aggravated murder on December 17, 1992. In a delayed appeal, we affirmed his conviction. See *State v. Fields* (May 22, 1997), Cuyahoga App. No. 70751, unreported, 1997 WL 272381. On March 17, 1997, just two months before we decided the direct appeal, petitioner filed a petition to vacate his sentence. The court dismissed the petition, finding it not timely filed pursuant to R.C. 2953.21(A)(2), and because the issues raised in the petition were *res judicata.* Petitioner's assignments of error contest this ruling.

I

We first consider whether we lack jurisdiction to hear this appeal because petitioner did not timely file his petition to vacate.

R.C. 2953.21(A)(2) provides:

"A petition under division (A)(1) of this section shall be filed no later than one hundred eighty days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction or adjudication or, if the direct appeal involves a sentence of death, the date on which the trial transcript is filed in the supreme court. If no appeal is taken, the petition shall be filed no later than one hundred eighty days after the expiration of the time for filing the appeal."

R.C. 2953.21(A)(2) provides for a one-hundred-eighty-day time period in which to file a petition for postconviction relief. This time limit became effective on September 21, 1995, through S.B. No. 4, Section 3. Prior to this amendment, a petition for postconviction relief could be filed any time after conviction. S.B. No. 4, Section 3 contains a provision for extending the time limit for filing petitions for defendants convicted prior to September 21, 1995:

"A person who seeks postconviction relief pursuant to sections 2953.21 through 2953.23 of the Revised Code with respect to a case in which sentence was imposed prior to the effective date of this act or to an adjudication as a delinquent child and order of disposition issued prior to the effective date of this act shall file a petition within the time required in division (A)(2) of section 2953.21 of the Revised Code, as amended by this act, or within one year from the effective date of this act, whichever is later."

Because petitioner pleaded guilty in 1992, he could file his petition within one year of the effective date of S.B. No. 4, Section 3—September 21, 1995—or within six months from the time he filed his transcript in his direct appeal. This petition was filed on March 17, 1997, more than one year from September 21, 1995, so this petition can be timely only if it was filed within six months from the time he filed the transcript in his direct appeal.

The transcript in petitioner's delayed appeal was filed on September 18, 1996, so the filing date of the petition to vacate judgment was within six months. The wrinkle in this case is that we granted a delayed appeal in petitioner's direct appeal. Under nearly identical circumstances, two appellate districts have held that a delayed appeal does not toll the time for filing a motion for postconviction relief under R.C. 2953.21(A)(2) and that a petitioner must file a petition within one hundred eighty days after the time for filing a direct appeal as of right expires pursuant to App. R. 4(A). See *State v. Price* (Sept. 29, 1998), Franklin App. No. 98AP–80, unreported, 1998 WL 680964; *State v. Johnson* (Apr. 21, 1999), Muskingum App. No. CT98–0029, unreported, 1999 WL 254456.

In *Price*, the court affirmed the trial court's dismissal of an untimely petition for postconviction relief after a delayed appeal and stated:

"As noted by the trial court, accepting the interpretation proposed by appellant 'nullifies the obvious intent of the General Assembly to place a time limitation on post-conviction actions.' Pursuant to R.C. 1.47, in interpreting a statute, we must presume that the entire statute is intended to be effective and that a reasonable result is intended. Since there is no time limitation either under the appellate rules or statutes upon a motion for delayed appeal, there would consequently be no time limitation for filing a petition for post-conviction relief if we accepted appellant's argument. Furthermore, it would be equally

unreasonable to permit a defendant who had neglected to file a direct appeal, and subsequently brought a delayed appeal, to be given more time to prepare and bring his post-conviction petition than a defendant who had timely prosecuted his direct appeal.

"We therefore hold that the time for filing appellant's motion for post-conviction relief under R.C. 2953.21(A)(2) expired one hundred eighty days after the time for filing his direct appeal as of right expired on August 12, 1995, pursuant to App.R. 4(A), and the trial court accordingly did not err in dismissing appellant's motion for post-conviction relief as not timely filed."

We agree with *Price* and find that the General Assembly's very strong intent to limit the time in which postconviction actions may be filed must control our decision here. Our agreement with *Price* under these circumstances is reinforced by the practical considerations involved with perfecting delayed appeals.

A delayed appeal may be perfected only by leave of the court of appeals. App.R. 5(A) states:

"(A) Motion by defendant for delayed appeal

"After the expiration of the thirty day period provided by App.R. 4(A) for the filing of a notice of appeal as of right in criminal cases, *an appeal may be taken only by leave of the court to which the appeal is taken.* A motion for leave to appeal shall be filed with the court of appeals and shall set forth the reasons for the failure of the appellant to perfect an appeal as of right." (Emphasis added.)

"The words 'by leave of the court' necessarily mean that the court of appeals has the discretion to allow or refuse the appeal." *State v. Bertram* (1997), 80 Ohio St.3d 281, 283, 685 N.E.2d 1239, 1240 (discussing difference between appeal as of right versus leave to appeal under R.C. 2945.67 and Crim.R. 12(J)); *State v. McGahan* (1949), 86 Ohio App. 283, 284, 41 O.O. 288, 288–289, 88 N.E.2d 613, 613. If an appellate court may deny leave to file a delayed appeal, the time limitation for filing a transcript on direct appeal set forth in S.B. No. 4, Section 3 becomes somewhat amorphous. Suppose a criminal appellant waits more than thirty days to file a direct appeal and subsequently seeks leave to file a delayed appeal. Exercising its sound discretion, the appellate court denies leave to file a delayed appeal. The effect of the appellate court's decision to deny leave to file a delayed appeal is that a transcript is not filed in the direct appeal. Were we to read S.B. No. 4, Section 3 literally, it would mean that there would be no time limit on when a postconviction relief petition could be filed under those circumstances.

That scenario would be unacceptable not only because it would frustrate the General Assembly's intent to limit the time in which postconviction petitions could be filed, but because a transcript of proceedings is not always crucial for postconviction petitions. While an indigent defendant is entitled to relevant

portions of a transcript in seeking postconviction relief, *State ex rel. Murr v. Thierry* (1987), 34 Ohio St.3d 45, 517 N.E.2d 226, a postconviction petition must be pending at the time the transcript is sought. *Id.* If a direct appeal is not taken in a criminal case, a transcript cannot be ordered until the petition for postconviction relief is filed. Were we to accept the proposition that a delayed appeal could stall the time limits contained in the statute, this would have the net effect of providing no time limit at all for filing petitions.

■ Transcripts are not always a necessity in postconviction relief cases because postconviction relief claims brought pursuant to R.C. 2953.21(A) must raise matters outside the record. See *State v. Perry* (1967), 10 Ohio St.2d 175, 39 O.O.2d 189, 226 N.E.2d 104, paragraph nine of the syllabus. In *State v. Broom* (May 7, 1998), Cuyahoga App. No. 72581, unreported, 1998 WL 230425, we referred to R.C. 2953.21(C), which requires the court deciding whether to grant a hearing on a petition for postconviction relief to "consider, in addition to the petition and supporting affidavits, all the files and records pertaining to the proceedings against petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript." We stated:

"Despite the seemingly mandatory language of [R.C. 2953.21(C)], the courts have not interpreted this section as placing a mandatory duty on the courts to consider a transcript of the proceedings. In *State v. Ishmail* (1978), 54 Ohio St.2d 402 [8 O.O.3d 405], 377 N.E.2d 500, Ishmail filed a petition for postconviction relief under R.C. 2953.21, challenging guilty pleas he entered on counts of burglary and grand theft. The trial court reviewed the dockets, records and journal entries of the case, but did not review a transcript of the plea hearing. It denied the petition for relief. On appeal, the court of appeals permitted Ishmail to supplement the record with the transcript of the plea hearing and set aside the guilty pleas. The supreme court reversed the court of appeals, stating at paragraph two of syllabus:

" 'Where a trial court, in denying a petition for post-conviction relief pursuant to R.C. 2953.21, does not consider a transcript of proceedings of the hearing at which the guilty pleas were entered, a Court of Appeals cannot add that transcript to the record before it and then decide the appeal on the basis of matter disclosed by the transcript.'

"We have found it implicit in the supreme court's holding in *Ishmail* that a trial court considering a petition for postconviction relief need not consider the trial transcript before ruling on a petition for postconviction relief. See *State v. Williams* (1991), 74 Ohio App.3d 686, 694, 600 N.E.2d 298 [303–304]; *State v. Montana* (Mar. 24, 1994), Cuyahoga App. No. 65024, unreported [1994 WL 97695].

"Even without this authority, we would find the court's failure to consider certain portions of the record did not adversely affect the outcome of the postconviction proceeding. In a motion seeking an enlargement of time in which to file the record on appeal, petitioner's counsel submitted an affidavit to this court in which she averred that certain documents were missing from the record transmitted by the court of common pleas. Among the missing documents were the three amendments to the initial petition for postconviction relief, the state's motion to dismiss the petition, the transcript, and the merit briefs filed in this court on direct appeal and in the supreme court. Those documents were contained on microfilm in the office of the clerk of the court, and later supplemented in the record to this court. The state entered into a stipulation with petitioner that those documents were not in the lower court record.

"Assuming those documents were not before the court when it ruled on the petition, we nonetheless find their presence in the record would not have affected the court's decision. The primary purpose of lower court record in a postconviction proceeding is to serve as a measuring stick against which the court can reliably determine whether the petition contains matter not presented at trial. The petitions in this case, as amended, contain nothing that was not presented at trial. To be sure, some of the exhibits contain affidavits from experts who give their opinions that eyewitness testimony would have been helpful to petitioner, and these exhibits were not presented to the court at trial. But this is simply new material for an old matter. The affidavits beg the initial question whether petitioner raised the subject of expert assistance in eyewitness identification, a matter we found fully litigated at trial and on appeal. All the other claims presented in the petition were likewise barred by res judicata." See, also, *State v. Braxton* (June 19, 1998), Lucas App. No. L–98–1032, unreported, 1998 WL 351877; *State v. McGuire* (Apr. 20, 1998), Preble App. No. CA97–06–015, unreported, 1998 WL 191415; *State v. McDowell* (July 23, 1997), Mercer App. No. 10–97–02, unreported, 1997 WL 410734.

We conclude that the transcript requirement for filing a direct appeal is not truly an impediment to filing a postconviction relief claim. That being the case, the court did not err by finding the petition barred because it had not been filed within one hundred eighty days after the thirty-day time period for filing a direct appeal under App.R. 4(A) had expired. The first assignment of error is overruled.

## II

The court also addressed the merits of petitioner's claim, presumably in the alternative to its finding that petitioner did not timely file his petition. The court found that petitioner had failed to present evidentiary documents containing

operative facts to demonstrate that his guilty plea was coerced or induced by false promises. Moreover, the court found that petitioner's claim that trial counsel performed ineffectively in failing to seek the appointment of an investigator was barred by *res judicata.*

We agree that these claims were barred by *res judicata.* In *State v. Perry* (1967), 10 Ohio St.2d 175, 39 O.O.2d 189, 226 N.E.2d 104, paragraph nine of the syllabus states:

"Under the doctrine of *res judicata,* a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was *raised or could have been raised by the defendant at the trial,* which resulted in that judgment of conviction, *or on an appeal* from that judgment." (Emphasis *sic.*)

In addition, the doctrine of *res judicata* is applicable to constitutional issues raised in a petition for postconviction relief.

"Constitutional issues cannot be considered in postconviction proceedings under Section 2953.21 *et seq.,* Revised Code, where they have already been or could have been fully litigated by the prisoner while represented by counsel, either before his judgment of conviction or on direct appeal from that judgment, and thus have been adjudicated against him. *Id.,* at paragraph seven of the syllabus."

■■ Accordingly, to avoid a finding of *res judicata,* a petitioner must submit evidentiary documents containing sufficient operative facts outside the record to demonstrate that he is entitled to relief. *State v. Kapper* (1983), 5 Ohio St.3d 36, 38, 5 OBR 94, 96, 448 N.E.2d 823, 825–826. In other words, the petitioner bears the initial burden of showing that the issue could not have been determined without resort to evidence outside the record on direct appeal, *State v. Cole* (1982), 2 Ohio St.3d 112, 114, 2 OBR 661, 663–664, 443 N.E.2d 169, 171–172, and the petitioner is entitled to a hearing only if the allegations outside the record are not rebutted by the record of the original criminal prosecution. R.C. 2953.21(E).

■ The petition made the claim that counsel should have requested an investigator because the fight resulting in the murder occurred as a result of provocation—a crime of passion over petitioner's common-law wife. He claims that a pink slip attached to the court file (a county information sheet) indicates that the murder occurred during an altercation. Petitioner raised this same point on direct appeal, a point we rejected as a basis for finding ineffective assistance of counsel. We stated, "Without more, the information in the 'pink slip' simply does not establish that counsel's performance was deficient or any prejudice to defendant resulted from counsel's performance. Therefore, defendant's claim of ineffective assistance of counsel fails and his sole assignment of error is over-

ruled." See *State v. Vance Fields* (May 22, 1997), Cuyahoga App. No. 70751, unreported, at 5, 1997 WL 272381.

Petitioner now attempts to show more by submitting two affidavits, which collectively insist that petitioner did not start the fight and that defense counsel did not discuss with petitioner the details of the fight. These affidavits do not establish any facts beyond those submitted in the direct appeal. They merely restate the same claims in the same form. Accordingly, we find the court did not err by dismissing the petition. The assigned errors are overruled.

*Judgment affirmed.*

PORTER, J., concurs.

KARPINSKI, J., concurs separately.

KARPINSKI, Judge, concurring.

I agree that the trial court correctly denied Fields's petition for postconviction relief, because it was barred by *res judicata* and otherwise failed to demonstrate that there were substantive grounds for relief. I therefore concur with Section II of the majority's opinion which holds that Fields's petition failed on the merits.

But I respectfully disagree with the majority's conclusion in Section I that Fields's petition was untimely. I am not convinced that Fields's petition was untimely under the statute *as it is written.*

Effective September 21, 1995, S.B. No. 4 established filing deadlines for petitions for postconviction relief. R.C. 2953.21(A)(2), as amended by S.B. No. 4, provides:

"A petition under division (A)(1) of this section shall be filed no later than one hundred eighty days after the date on which the trial transcript is filed in the court of appeals in the *direct* appeal of the judgment of conviction or adjudication or, if the direct appeal involves a sentence of death, the date on which the trial transcript is filed in the supreme court. If *no appeal* is taken, the petition shall be filed no later than one hundred eighty days after the expiration of the time for filing the appeal." (Emphasis added.) 146 Ohio Laws, Part IV, 7823–7824.

Section 3 of S.B. No. 4 provided:

"A person who seeks postconviction relief pursuant to sections 2953.21 through 2953.23 of the Revised Code with respect to a case in which sentence was imposed prior to the effective date of this act or to an adjudication as a delinquent child and order of disposition issued prior to the effective date of this act shall file a petition within the time required in division (A)(2) of section 2953.21 of the

Revised Code, as amended by this act, or within one year from the effective date of this act, whichever is later." *Id.* at 7826.

Section 3 clearly served as a mechanism to phase in the filing deadlines imposed by R.C. 2953.21(A)(2). Thus any person convicted before September 21, 1995, had to file a petition for postconviction relief either within the filing deadlines established under R.C. 2953.21(A)(2) or by September 23, 1996, whichever is later.[1] Since Fields's petition plainly was not filed by September 23, 1996, the issue is whether he filed his petition within the time required in R.C. 2953.21(A)(2).

The paramount concern of a court when construing a statute is the legislative intent in enacting the statute as discerned by examining the language employed by the General Assembly. *State ex rel. Richard v. Bd. of Trustees of Police & Firemen's Disability & Pension Fund* (1994), 69 Ohio St.3d 409, 411, 632 N.E.2d 1292, 1294–1295. The words used in a statute must be taken in their usual, normal, or customary meaning, and we must give effect to the words used without inserting words not used. *Id.* at 412, 632 N.E.2d at 1295.

When the General Assembly employs terms that, unless otherwise restricted, encompass a panoply of legally recognized relief, we must take those terms in their inclusive sense. Thus in *Rice v. CertainTeed Corp.* (1999), 84 Ohio St.3d 417, 704 N.E.2d 1217, the court held that the General Assembly's use of the term "damages" under R.C. 4112.99 could not be construed to exclude the recovery of punitive damages. The court explained:

" 'Damages,' absent a restrictive modifier like 'compensatory,' 'actual,' 'consequential' or 'punitive,' is an inclusive term embracing the panoply of legally recognized pecuniary relief. Thus, CertainTeed's contention that 'damages' as used in the statute does not encompass punitive damages works only if we presume imprecision on the General Assembly's part. The notion that the General Assembly carefully and precisely used the word 'damages' to segregate out compensatory damages seems entirely fanciful." *Rice*, 84 Ohio St.3d at 419, 704 N.E.2d at 1218–1219.

Viewed under these rules, R.C. 2953.21(A)(2) provides for two time schedules, one if a "direct appeal" is taken and a shorter one if "no appeal" is taken. Twice the statute specifies a "direct appeal," and then speaks generally of no appeal. By providing for only these two categories, the statute implies they are mutually exclusive, at least in a postconviction relief matter. By the first sentence of R.C. 2953.21(A)(2), the one-hundred-eighty-day period to file the petition clearly begins to run upon the filing of the transcript in the "direct appeal of the

---

1. Because September 21, 1996, fell on a Saturday, the filing deadline was extended to September 23, 1996. *State v. Saylor* (1997), 125 Ohio App.3d 633, 709 N.E.2d 229.

judgment of conviction." The statute does not restrict the "direct appeal" to an appeal as of right under App.R. 4(A), to the exclusion of a delayed appeal under App.R. 5(A). Absent such a limitation, a "delayed appeal" under App.R. 5(A) is still a "direct appeal of the judgment of conviction."

I therefore cannot agree with the majority that a "delayed appeal" should be treated as if "no appeal is taken," under the second sentence of R.C. 2953.21(A)(2). The second sentence plainly governs when the defendant forgoes any direct appeal and proceeds directly with postconviction relief. Because the statute does not expressly exclude a delayed appeal, we must take the plain meaning of the words and assume that a delayed appeal is an appeal and therefore cannot be considered "no appeal." As the saying goes, "if it walks like a duck * * *." The second sentence, therefore, cannot apply to the case at bar.

Here, a direct appeal, albeit delayed, was taken. The court record for case No. 70751 reflects that the record included an App.R. 9(B) file and transcript and that the record was filed on September 18, 1996. Fields's petition for postconviction relief was filed on March 17, 1997. There is no dispute that Fields's petition was filed on the one hundred eightieth day after his delayed appeal transcript was filed in the court of appeals. Thus Fields filed his petition within the deadline of the statute as it is written.

I have no disagreement with the majority that the apparent object of this legislation was to establish deadlines for filing petitions for postconviction relief where none existed before. But I cannot agree that Fields's filing was not within the deadline of the statute as it is written. Fields filed his petition within one hundred eighty days after the date on which the trial transcript was filed in the court of appeals in the direct appeal of his judgment of conviction.

But even if Fields's petition were considered timely, I am in full agreement with the remainder of the majority's decision holding that Fields was not entitled to postconviction relief on the merits. Accordingly, I respectfully concur.