The STATE of Ohio, Appellee,

v.

FULLER, Appellant.

[Cite as *State v. Fuller*, 171 Ohio App.3d 260, 2007-Ohio-2018.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–060533.

Decided April 27, 2007.

Paul Fuller, pro se.

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Philip R. Cummings, Assistant Prosecuting Attorney, for appellee.

_____

Per Curiam.

{¶ 1} Petitioner-appellant, Paul Fuller, appeals the Hamilton County Common Pleas Court's judgment denying his petition for postconviction relief. Because the entry from which Fuller appeals is not a final, appealable order, we dismiss his appeal.

{¶ 2} On April 23, 2004, Fuller was convicted upon his plea of guilty to aggravated trafficking in drugs. On May 25, he filed a pro se notice of appeal. The state moved to dismiss the appeal, not on the ground that it was untimely, but on the ground that it had been taken from "an agreed sentence." On July 2, 2004, we granted the motion to dismiss without elaboration.

{¶ 3} On January 24, 2006, we reopened Fuller's appeal upon our determination that he had been denied the effective assistance of counsel on appeal, because his retained trial counsel had not, as Fuller had requested, filed a notice of appeal, and because the trial court had not, despite Fuller's submission of an affidavit of indigency, appointed appellate counsel. The transcript of the proceedings at trial was filed in the appeal on March 10, 2006.[1] On April 18, 2006, Fuller filed his postconviction petition. The common pleas court denied the petition for lack of jurisdiction. Fuller now appeals.

## I. The Common Pleas Court Had Jurisdiction to Entertain Fuller's Petition

{¶ 4} In his first assignment of error, Fuller contends that the common pleas court erred in declining to entertain his petition. We agree.

## A

{¶ 5} R.C. 2953.21 et seq., governing postconviction proceedings, permit a collateral challenge to a judgment of conviction by one "who claims that there was such a denial or infringement of [his] rights [in the proceedings resulting in his conviction] as to render [his conviction] void or voidable under the Ohio Constitution or the Constitution of the United States."[2] R.C. 2953.21(A)(2) provides that a postconviction petition "shall be filed no later than one hundred eighty days after the date on which the trial transcript is filed in the court of appeals in the

_____

1. On March 9, 2007, we affirmed the judgment of conviction. *State v. Fuller*, 1st Dist. No. C–040318, 2007-Ohio-1020, 2007 WL 703164.

2. R.C. 2953.21(A)(1)(a).

direct appeal of the judgment of conviction," and that "[i]f no appeal is taken * * *, the petition shall be filed no later than one hundred eighty days after the expiration of the time for filing the appeal." R.C. 2953.23 closely circumscribes the common pleas court's jurisdiction to entertain a tardy postconviction petition: The petitioner must show that he was unavoidably prevented from discovering the facts upon which his petition depends, or he must show that his claim is predicated upon a new or retrospectively applicable federal or state right recognized by the United States Supreme Court since the expiration of the prescribed time; and he must show "by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found [him] guilty." [3] Thus, a common pleas court has jurisdiction to entertain a postconviction petition only if the petitioner meets either the time strictures of R.C. 2953.21 or the jurisdictional requirements of R.C. 2953.23.

{¶ 6} Fuller filed his postconviction petition 39 days after the transcript of the proceedings had been filed in his reopened appeal. The statute affords a postconviction petitioner 180 days "after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction." [4] But the state argues that the statute did not afford Fuller 180 days from the date the transcript was filed in his reopened appeal, because a reopened appeal is not a "direct appeal." To hold otherwise, the state insists, would be to "extend[ ] indefinitely" the time for filing a postconviction petition and thus to "frustrate" the General Assembly's purpose in enacting the statute's time limits.

## B

{¶ 7} In 1998, the Tenth Appellate District in *State v. Price* followed this line of reasoning to hold that the common pleas court had properly declined to entertain a postconviction petition filed within 180 days of the filing of the trial transcript in an appeal by leave of court, or "delayed appeal," under App.R. 5(A).[5] The court in *Price* noted that the General Assembly had amended the postconviction statutes in 1995 to add the R.C. 2953.21(A)(1) time limits.[6] The court then interpreted the statute by applying the statutory presumptions that the legislature had intended by that amendment that the entire statute be effective and that the result be just and reasonable.[7] The court noted that App.R. 5(A) places no

---

3. R.C. 2953.23(A)(1).

4. R.C. 2953.21(A)(2).

5. *State v. Price* (Sept. 29, 1998), 10th Dist. No. 98AP–80, 1998 WL 680964.

6. Am.Sub.S.B. No. 4, effective Sept. 21, 1995.

7. R.C. 1.47(B) and (C).

time limit on a motion for a delayed appeal. Thus, the court reasoned, an interpretation of the statute that permitted a postconviction petition to be filed within 180 days of the filing of the transcript in a delayed appeal would nullify the legislature's "obvious" intent to place time limits on such actions and would unreasonably afford "a defendant who had neglected to file a direct appeal, and subsequently brought a delayed appeal" more time than that afforded "a defendant who had timely prosecuted his direct appeal." Accordingly, the court concluded that the time for filing Price's petition had "expired one hundred eighty days after the time [had expired] for filing his *direct appeal as of right* * * * pursuant to App.R. 4(A)." [8]

{¶ 8} In 2000, the Tenth Appellate District in *State v. Bird* expanded upon the reasoning of its unpublished decision in *Price* to arrive at the same conclusion.[9] The court deemed the statute's use of the phrase "direct appeal" ambiguous and thus subject to interpretation "based upon the legislative intent" of the amendment, as determined in *Price,* to place time limits on postconviction actions.[10] Thus, the court in *Bird* made manifest what it had in *Price* implied: that for purposes of the postconviction statutes, the phrase "direct appeal" means only an appeal as of right filed under App.R. 4; it does not encompass an appeal by leave of court under App.R. 5(A).

{¶ 9} The Fifth, Sixth, Seventh, and Eighth Appellate Districts have followed *Price* to hold that the phrase "direct appeal," as used in the postconviction statutes, does not include a delayed appeal under App.R. 5(A).[11] And the Fifth Appellate District, in its 2000 decision in *State v. Godfrey,* embraced the rationale of *Price* to hold that "direct appeal" does not include an appeal reopened under App.R. 26(B).[12]

{¶ 10} The *Godfrey* court based its holding upon its assertion that "[a] 'direct appeal' is referred to as an 'appeal as of right' under App.R. 3" and upon "the procedural differences that exist between a 'direct appeal' or 'appeal as of right' and a 'reopened appeal.'" The court acknowledged that App.R. 26(B), unlike

---

8.   Emphasis added.

9.   *State v. Bird* (2000), 138 Ohio App.3d 400, 741 N.E.2d 560.

10.   Id. at 405, 741 N.E.2d 560.

11.   See, e.g., *State v. Macias,* 6th Dist. No. L–05–1256, 2006-Ohio-1988, 2006 WL 1047481; *State v. Johnson* (2001), 144 Ohio App.3d 222, 759 N.E.2d 889; *State v. Fields* (1999), 136 Ohio App.3d 393, 736 N.E.2d 933; *State v. Johnson* (Apr. 21, 1999), 5th Dist. No. CT98–0029, 1999 WL 254456.

12.   *State v. Godfrey* (Feb. 28, 2000), 5th Dist. No. 99 CA 95, 2000 WL 329802; accord *State v. Hanning,* 5th Dist. No. 02 CA 12, 2003-Ohio-3622, 2003 WL 21540443.

App.R. 5(A), limits the time within which an application to reopen an appeal may be filed. But the court asserted that because App.R. 26(B) permits an appeal to be reopened out of time upon a showing of good cause for the filing delay, "theoretically, there is no time limitation with a reopened appeal." The court further asserted that to read the statute to permit a postconviction petition to be filed within 180 days of the filing of the transcript in a reopened appeal would effectively permit the filing of two petitions: one within 180 days of the filing of the transcript in the "direct appeal" and a second within 180 days of the filing of the transcript in the reopened appeal. Thus, the court concluded, "it is not the filing of the transcript that triggers the [180–]day rule in R.C. 2953.21(A)(2), but rather the filing of a direct appeal."

## C

{¶ 11} We are not bound by the decisions in *Price* and its progeny. Nor does the force of the courts' logic in those cases compel us to the same conclusion. To the contrary, our analysis leads us to conclude that the phrase "direct appeal" as used in R.C. 2953.21 encompasses an appeal as of right under App.R. 4, an appeal by leave of court under App.R. 5(A), and an appeal reopened under App.R. 26(B).

{¶ 12} R.C. 2953.21(A)(2) provides that if a *"direct appeal of the judgment of conviction"* is taken, the time for filing a postconviction petition begins to run on "the date on which the trial transcript is filed in * * * the direct appeal"; "if no [direct] appeal is taken," the time for filing a postconviction petition begins to run upon "the expiration of the time for filing the [direct] appeal." [13] The *Price* court deemed R.C. 2953.21(A)(2) ambiguous, interpreted the statute to advance the statute's "obvious" legislative intent, and concluded that a "direct appeal" is synonymous with an "appeal as of right." The *Godfrey* court proceeded upon the assertion that "[a] 'direct appeal' is referred to as an 'appeal as of right' under App.R. 3." And it based its holding on "the procedural differences that exist between a 'direct appeal' or 'appeal as of right' and a 'reopened appeal.'" Thus, the decisions in *Price* and its progeny turned upon a definition of the phrase "direct appeal" that includes an App.R. 4 "appeal as of right," but excludes an App.R. 5(A) delayed appeal and an App.R. 26(B) reopened appeal.

### 1. The Appellate Rules

{¶ 13} A close reading of the appellate rules does not support the distinctions drawn by the courts in *Price* and its progeny between an appeal by right and a delayed or reopened appeal.

---

**13.** R.C. 2953.21(A)(2).

**a**

{¶ 14} App.R. 3 governs how an "appeal as of right" is taken. App.R. 4 prescribes the time for taking an "appeal as of right." App.R. 5(A) governs an "appeal by leave of court," or "delayed appeal," granted after that time has expired. And App.R. 26(B) permits the "reopening of [an] appeal from [a] judgment of conviction and sentence."

{¶ 15} But the procedural differences between an appeal by right under App.R. 3 and 4 and an App.R. 26(B) reopened appeal are not as significant as the court in *Godfrey* would have them. App.R. 3 and 4 differ from App.R. 26 in that they provide different means for initiating intermediate appellate review of a judgment of conviction. But after an appeal is reopened, an indigent appellant is entitled to appointed counsel, and the appeal "proceed[s] as on an initial appeal in accordance with [the appellate] rules except that the court may limit its review to those assignments of error and arguments not previously considered." [14]

**b**

{¶ 16} The *Godfrey* court's assertion that "[a] 'direct appeal' is referred to as an 'appeal as of right' under App.R. 3" is also mistaken. The phrase "direct appeal" appears nowhere in the text of App.R. 3. Nor does it appear in the text of App.R. 4, 5, or 26. And the appellate rules and staff notes that contain the phrase do not use it in a way that supports the definition of the phrase upon which the decisions in *Price* and its progeny turn.

{¶ 17} The phrase "direct appeal" appears in the staff note to the 1994 amendment to App.R. 5(A). The amendment deleted a requirement that a motion for a delayed appeal demonstrate a probability that the alleged errors occurred. The rule's drafters noted that the "[d]enial of leave to file a delayed appeal for failure to demonstrate the probability of error usually [led] to subsequent litigation of the issue by direct appeals to the Ohio and United States Supreme Courts, petitions to vacate sentence under R.C. 2953.21 et seq., and appeals thereon, and/or federal habeas corpus petitions and appeals." The drafters eliminated the probability-of-error requirement "primar[ily]" to promote "judicial economy," because "[r]eview of the merits by the courts of appeals upon the *initial direct (albeit delayed) appeal* would thus avoid the presentation of the probability of error issue to as many as nine subsequent tribunals." (Emphasis added.)

{¶ 18} The phrase also appears in the text of and the staff note to App.R. 6. The rule provides the procedure when a common pleas court in reviewing a postconviction petition and an appellate court in a "direct appeal" "are exercising

---

**14.** App.R. 26(B)(6)(a) and (B)(7).

[the] concurrent jurisdiction [established by the 1995 amendment of R.C. 2953.21] to review a judgment of conviction." The staff note to the rule's 1997 amendment states that the rule's express purpose is to facilitate the "[o]rderly exercise" of the "concurrent jurisdiction" and to coordinate "appellate review in the direct appeal and appellate review of the post-conviction ruling * * * to preserve efficient use of judicial resources." Thus, the phrase "direct appeal" is used in App.R. 6 to distinguish a direct challenge to a conviction from a collateral challenge to a conviction.

## 2. R.C. 2953.21 et seq.

{¶ 19} We do not find, as the courts in *Price* and its progeny have found, that the postconviction statutes are ambiguous and thus in need of interpretation. R.C. 2953.21(A)(2) plainly affords a petitioner who has taken a direct appeal from his judgment of conviction 180 days from the filing of the trial transcript in his direct appeal and affords a petitioner who has taken no direct appeal from his judgment of conviction 180 days from the expiration of the time for filing his direct appeal.

{¶ 20} The statutes do not define the phrase "direct appeal of the judgment of conviction." But neither do they expressly apply only to App.R. 4 appeals of right or expressly exclude from their operation App.R. 5(A) delayed appeals or App.R. 26(B) reopened appeals.

{¶ 21} Under the Ohio Rules of Appellate Procedure, an appellant may, by means of an appeal by right, a delayed appeal, or a reopened appeal, bring before an intermediate appellate court a direct, as opposed to a collateral, challenge to his judgment of conviction. Thus, the postconviction statutes, by their terms, plainly afford a postconviction petitioner who has timely filed an appeal by right, who has been granted a delayed appeal, or whose appeal has been reopened, 180 days from the date on which the trial transcript is filed in his appeal.

## 3. Legislative Purpose

{¶ 22} Despite the plain language of the postconviction statutes, the courts in *Price, Bird,* and *Godfrey* constructed an ambiguity based upon R.C. 2953.21(A)(2)'s "obvious" legislative purpose to place time limits on postconviction actions. Then, applying the statutory presumptions that the General Assembly had intended by the amendment that the entire statute be effective and that the result be just and reasonable,[15] the courts interpreted the phrase "direct appeal" to mean an appeal by right, and not a delayed or reopened appeal. Our

---

15. R.C. 1.47(B) and (C).

interpretation of the phrase by employing the statutory presumptions leads us to a contrary conclusion.

{¶ 23} As we have noted, the Ohio Rules of Appellate Procedure use the phrase "direct appeal" to distinguish between the review conducted in an appeal taken directly from a judgment of conviction and the collateral review of a conviction conducted pursuant to R.C. 2953.21 et seq. The postconviction statutes afford relief from a judgment of conviction based upon constitutional error that is not manifested by the record in, and that thus could not have been raised in, a direct appeal.[16] The statutes provide "the exclusive remedy by which a person may bring a collateral challenge to the validity of a conviction or sentence in a criminal case."[17] They permit a common pleas court to exercise jurisdiction over a postconviction petition concurrent with an appellate court's exercise of jurisdiction over a pending "direct appeal,"[18] and in furtherance of that jurisdiction, they tie the time for filing the postconviction petition to the filing of the transcript in the direct appeal. Accordingly, a postconviction proceeding may fairly be viewed as the exclusive complement to a direct appeal, permitting a collateral challenge to a judgment of conviction that proceeds contemporaneously with the direct appeal, but that, unlike the direct appeal, depends for its resolution upon matters outside the record.

{¶ 24} The General Assembly enacted the postconviction statutes in 1965 with the purpose to substitute for habeas corpus proceedings "a new procedure" to make available "the best method of protecting constitutional rights of individuals and, at the same time, provid[e] a more orderly method of hearing such matters."[19] Until their amendment in 1995, the statutes permitted a petitioner to file a petition "at any time" after his conviction.[20]

{¶ 25} The General Assembly's apparent purpose in limiting the time for filing a postconviction petition was to put a stop to serial collateral attacks upon the judgment of conviction well after the direct-appeal process had been completed. But we will not read the time limitations imposed by the 1995 amendment to defeat the overarching purpose of the postconviction statutes: to provide one

---

16. See R.C. 2953.21(A)(1)(a); *State v. Perry* (1967), 10 Ohio St.2d 175, 39 O.O.2d 189, 226 N.E.2d 104.

17. R.C. 2953.21(J).

18. See R.C. 2953.21(C).

19. Am.S.B. No. 383, 131 Ohio Laws, 684–685, 1610; see *State v. Perry*, 10 Ohio St.2d at 180, 39 O.O.2d 189, 226 N.E.2d 104.

20. See R.C. 2953.21(A)(2).

convicted of a criminal offense with the means to challenge his conviction with matters outside the record.

{¶ 26} If, in enacting R.C. 2953.21(A)(2), the General Assembly's sole concern was, as the courts in *Price* and its progeny would have it, restricting the time within which a postconviction claim may be brought, the legislature could simply have fixed the entry of the judgment of conviction as the event triggering the 180 days. It did not. By instead setting as the triggering event the filing of the transcript "in the direct appeal of the judgment of conviction," the legislature effectively acknowledged that the trial record plays as critical a role in preparing a postconviction petition as it does in prosecuting a direct appeal.

{¶ 27} The courts in *Price* and its progeny argue that a definition of the phrase "direct appeal" that includes a delayed or reopened appeal would frustrate the General Assembly's purpose in amending the postconviction statutes because it would effectively allow an unlimited amount of time to file a postconviction petition. This argument overstates the case. The postconviction statutes themselves limit the time within which a postconviction petition may be filed. The length of the delay in seeking leave to appeal is a factor in a common pleas court's exercise of its discretion to grant a delayed appeal. And a court may grant an application to reopen an appeal, whether timely filed or late for good cause, only if the applicant demonstrates "a 'genuine issue' as to whether he has a 'colorable claim' of ineffective assistance of counsel on appeal." [21]

{¶ 28} The court in *Godfrey* asserted that allowing a postconviction petition to be filed within 180 days of the filing of the transcript in a reopened appeal would effectively permit the filing of two petitions: one within 180 days of the filing of the transcript in the "direct appeal" and a second within 180 days of the filing of the transcript in the reopened appeal. But the doctrine of res judicata precludes a postconviction petitioner from presenting in a subsequent petition matters that were determined or could fairly have been determined in an earlier postconviction petition or in the direct appeal.[22]

{¶ 29} The court in *Price* insisted that permitting a postconviction petition to be filed within 180 days of the filing of the transcript in a delayed appeal would reward "a defendant who had neglected to file a direct appeal" by affording him more time than that afforded "a defendant who had timely prosecuted his direct appeal." But the court's statement mistakenly presumes negligence or calculation on the part of a defendant seeking a delayed appeal. Just as the postconvic-

---

21. *State v. Spivey* (1998), 84 Ohio St.3d 24, 25, 701 N.E.2d 696.

22. *State v. Perry*, 10 Ohio St.2d 175, 39 O.O.2d 189, 226 N.E.2d 104, paragraph nine of the syllabus.

tion statutes contemplate circumstances that excuse a delay in filing a postconviction petition,[23] the Ohio Rules of Appellate Procedure, by permitting a delayed appeal by leave of court and by permitting an appeal to be reopened, contemplate that circumstances beyond a criminal defendant's control might arise to impair his ability to exercise his right to appeal his conviction.

{¶ 30} Fuller's case is illustrative. Fuller had effectively lost his right to directly challenge his conviction before this court, not because of a lack of diligence on his part, but because he had been denied his constitutional right to the effective assistance of counsel on appeal. As a further consequence, he did not have the benefit of the trial transcript to aid him in preparing a postconviction petition.

{¶ 31} By interpreting the phrase "direct appeal" as used in R.C. 2953.21 et seq. to encompass appeals reopened under App.R. 26(B), we accord the phrase a meaning consistent with its use in the appellate rules. By reading the postconviction statutes to permit a postconviction petitioner to file his petition within 180 days from the filing of the transcript in his reopened appeal, we advance the overarching legislative purpose of the postconviction statutes to provide a criminal defendant with the means to mount a challenge to a judgment of conviction based on matters outside the trial record. And in doing so, we do no violence to R.C. 2953.21(A)(2)'s legislative purpose to place time limits on postconviction proceedings. We, therefore, hold that the common pleas court erred in declining to entertain Fuller's petition on the ground that it was not timely filed.

## II. The Court of Appeals Has No Jurisdiction to Entertain This Appeal

{¶ 32} When a common pleas court denies a postconviction petition that satisfies the time strictures of R.C. 2953.21 or the jurisdictional requirements of R.C. 2953.23, the court must make and file findings of fact and conclusions of law.[24] An entry denying a postconviction petition that does not contain findings of fact and conclusions of law, and that does not otherwise apprise the petitioner of the basis for dismissal and permit meaningful appellate review, "is incomplete and it thus does not commence the running of the time period for filing an appeal therefrom." [25]

---

23. See R.C. 2953.21 and 2953.23.

24. R.C. 2953.21(C) and (G); see *State ex rel. Carroll v. Corrigan* (1999), 84 Ohio St.3d 529, 705 N.E.2d 1226; *State v. Lester* (1975), 41 Ohio St.2d 51, 70 O.O.2d 150, 322 N.E.2d 656, paragraph two of the syllabus; *State v. Byrd* (2001), 145 Ohio App.3d 318, 762 N.E.2d 1043.

25. *State v. Mapson* (1982), 1 Ohio St.3d 217, 218, 1 OBR 240, 438 N.E.2d 910; see *State ex rel. Carrion v. Harris* (1988), 40 Ohio St.3d 19, 19–20, 530 N.E.2d 1330.

{¶ 33} The entry denying Fuller's postconviction petition stated only that the court "[had] no jurisdiction to entertain the petition as [Fuller had] failed to meet the conditions set forth in R.C. 2953.23(A) * * *." Thus, the court did not make findings of fact and conclusions of law or otherwise meaningfully apprise Fuller or this court of a basis for denying the petition. Therefore, the entry is not a final, appealable order.[26]

## III. The Second Assignment of Error Is Moot

{¶ 34} Our disposition of his first assignment of error renders moot Fuller's contention in his second assignment of error that the common pleas court erred in "rul[ing] on" the state's untimely memorandum in opposition to his postconviction petition. Accordingly, we do not reach the merits of that challenge. See App.R. 12(A)(1)(c).

## IV. We Dismiss

{¶ 35} We therefore conclude that the common pleas court had jurisdiction to entertain Fuller's postconviction petition. But in the absence of findings of fact and conclusions of law, the judgment from which Fuller appeals is not a final, appealable order. Thus, we are without jurisdiction to review the court's disposition of the petition. Accordingly, we dismiss Fuller's appeal.[27]

Appeal dismissed.

SUNDERMANN, P.J., HENDON and WINKLER, JJ., concur.

RALPH WINKLER, J., retired, of the First District Court of Appeals, sitting by assignment.

---

**26.** See, also, State ex rel. Konoff v. Moon (1997), 79 Ohio St.3d 211, 680 N.E.2d 989; accord State v. Thomas, 1st Dist. No. C–050245, 2005-Ohio-6823, 2005 WL 3501574; State v. Gholston, 1st Dist. No. C–010789, 2002-Ohio-3674, 2002 WL 1585918.

**27.** We note parenthetically that the Ohio Supreme Court in State ex rel. Ferrell v. Clark (1984), 13 Ohio St.3d 3, 13 OBR 378, 469 N.E.2d 843, held that "[m]andamus will lie to compel a court to proceed to final judgment in an action for post-conviction relief." Accord State v. Gholston, supra.