*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0076p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

MATTHEW E. GUNNER,

           *Petitioner-Appellant*,

    *v.*

ROBERT WELCH, Warden,

             *Respondent-Appellee.*

No. 13-3396

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 3:09-cv-03009—Benita Y. Pearson, District Judge.

Decided and Filed: April 17, 2014

Before: MOORE and GRIFFIN, Circuit Judges; KORMAN, District Judge.[*]

_____

## COUNSEL

_____

**ON BRIEF:** John F. Potts, LAW OFFICE OF JOHN F. POTTS, Toledo, Ohio, for
Appellant.  Gene D. Park, OFFICE OF THE OHIO ATTORNEY GENERAL,
Columbus, Ohio, for Appellee.

_____

## OPINION

_____

    EDWARD R. KORMAN, District Judge.  This appeal from a judgment of the
United States District Court for the Northern District of Ohio denying a petition for a
writ of habeas corpus  raises a significant issue regarding the obligation of assigned
appellate counsel in Ohio.  Specifically, petitioner was convicted of drug trafficking
offenses and sentenced to two concurrent ten year mandatory-minimum sentences. Prior

_____

[*]The Honorable Edward Korman, Senior United States District Judge for the Eastern District of
New York, sitting by designation.

to trial, the prosecutor offered petitioner a plea that would have eliminated the mandatory-minimum sentence of ten years. R. 8-1, Tr. of Proceedings at 118-21 (Page ID #166-69). Instead, petitioner would have faced a sentence of three to ten years. *Id.* The nature of the plea was explained to petitioner by the trial judge and the prosecutor. *Id.* Indeed, the trial judge asked the prosecutor to place on the record the nature of the evidence against petitioner if he went to trial. *Id.* at 121-24 (Page ID #169-73). We need not burden this opinion with a detailed discussion of that evidence. Suffice it to say that the case as outlined by the prosecutor during the discussion of a possible plea was exceptionally compelling. Indeed, as petitioner's first counsel on appeal, Stephen D. Long, advised him, "the state had a very strong case at trial, in my opinion, and you were a proverbial 'fish in a barrel.'" R. 8-1, Letter from Stephen D. Long to Matthew Gunner (Aug. 17, 2006) at 106 (Page ID #154).

Nevertheless, petitioner did not accept the plea bargain because, as he alleges in an uncontroverted affidavit, his trial counsel "never recommended that I take the plea bargain, and encouraged me to go to trial." R. 8-1, Aff. of Matthew Gunner at 103 (Page ID #151). Instead, trial counsel told petitioner that, if he took the plea bargain, he might get sentenced to at least five years, but he could just as likely get ten years, "and if I got 10 years on a plea bargain, I had no chance to appeal, but if we lost at trial and I got 10 years, we would be able to appeal." *Id.* Petitioner's affidavit continues that, "I was never told that if I had never been to prison before, the Judge was required to at least consider giving me the minimum sentence of 3 years, or that by law a maximum sentence was only supposed to be given to the worst offenders. I was never told that if I took the plea bargain and got the maximum 10 years sentence, it could be appealed." *Id.*; *see* Ohio Rev. Code Ann. § 2953.08(a)(1).

After the inevitable guilty verdict that followed petitioner's rejection of the plea offer, his mother spoke with Mr. Long in an effort to explain the circumstances surrounding the rejection of the plea. According to her affidavit, "Mr. Long told me he did not want to talk to me about what happened because he could only use what was in the record and he wanted to look at the record fresh, the same way the Court of Appeals

would look at it." R. 8-1, Aff. of Michelle Borowicz at 108 (Page ID #156). In his own affidavit filed in the district court, Mr. Long did not dispute the affidavit filed by petitioner's mother. R. 18-1, Aff. of Stephen D. Long at 1-2 (Page ID #317-18). Instead, he asserted that he was appointed to represent petitioner only for matters "related to his direct appeal as a matter of right." *Id.*

Mr. Long's narrow view of his role brings us to the heart of the issue on this appeal. A brief review of Ohio law as it relates to appeals from a judgment of conviction is necessary to place the issue in context. A claim of ineffective assistance of counsel that is dependent on facts that are not part of the trial record cannot be raised on direct appeal. Instead, it must be raised in a post-conviction proceeding pursuant to Ohio Rev. Code § 2953.21. Because the Ohio General Assembly intended that "the direct appeals process run concurrently with the post-conviction process in criminal cases," *To Make Changes in the Postconviction Relief Law: Hearing on S.B.4 Before the Subcomm. on Criminal Justice of the S. Comm. on the Judiciary*, 121st Sess., (Ohio Jan. 17, 1995) (statement of Sen. Bruce Johnson, sponsor of bill), it provided that such a petition must be filed within 180 days from the date on which the trial transcript is filed with the appellate court, Ohio Rev. Code Ann. § 2953.21(c)(2). By "setting as the triggering event the filing of the transcript in the direct appeal of the judgment of conviction, the legislature effectively acknowledged that the trial record plays as critical a role in preparing a postconviction petition as it does in prosecuting a direct appeal." *State v. Fuller*, 870 N.E.2d 255, 261 (Ohio Ct. App. 2007) (internal quotations omitted).

Nevertheless, Mr. Long did not advise petitioner or his mother when the trial transcript was filed. Nor did he advise them of the short filing deadline. Instead, he let the 180-day period pass. After the Sixth District Court of Appeals of Ohio affirmed the judgment of conviction, Mr. Long was replaced by another attorney, who filed a notice of appeal to the Supreme Court of Ohio and endeavored to obtain relief for petitioner by filing an application for reopening the appeal pursuant to Ohio Appellate Rule 26(B). The basis for the motion was that Mr. Long had been ineffective because he had failed to advise petitioner on the time limit for post-conviction relief. The motion was denied

because this was not a ground for relief under Rule 26(B).  R. 8-1, Decision and J. of the Ct. of Appeals of Ohio Sixth Appellate District at 140-43 (Page ID #188-91).

This petition for a writ of habeas corpus was then filed in the United States District Court for the Northern District of Ohio.  The petition asserted a single claim, namely, that petitioner's "trial counsel was constitutionally ineffective for failing to advise him in the strongest possible terms to take a plea bargain offered by the State." R. 23, Mem. of Op. and Order at 4 (Page ID #384).  Pointing to the fact that he was only eighteen-years-old at the time of his trial with no prior felony record, petitioner argued that if he had accepted the offer he was likely to receive a sentence well below the ten-year mandatory-minimum to which he was ultimately sentenced.  *Id*.  While petitioner acknowledged that this claim should have been raised in a post-conviction proceeding pursuant to § 2953.21, he argued that his failure to do so should be excused because Mr. Long, his appellate attorney, failed to advise him of the time limit for post-conviction relief.  *Id.*

The district judge denied the petition on the ground that Mr. Long was under no obligation to provide such advice and that his failure to do so did not excuse petitioner's procedural default.  *Id.* at 11 (Page ID #391).  Relying on *Wilson v. Hurley*, 382 Fed. Appx. 471, 472 (6th Cir. 2010), an unpublished opinion that does not constitute binding precedent, *United States v. Utesch*, 596 F.3d 302, 312 (6th Cir. 2010), the district judge held "that a direct-appeal attorney cannot deprive a client of constitutionally effective assistance of counsel by failing to advise that client of matters *outside* the direct appeal for which there is no right to an attorney under the Constitution."  R. 23, Mem. of Op. and Order at 12 (Page ID #392); *Gunner v. Welch*, No. 3:09CV03009, 2013 WL 774154, at *7 (N.D. Ohio Feb. 28, 2013).  Thus, because petitioner did not have a right to an attorney in the post-conviction proceeding, his attorney on direct appeal had no obligation to advise him of the time limit for pursuing that remedy.

We disagree with the analysis of the district court. This case presents two discrete issues.  The first is whether petitioner's first appellate counsel had an obligation to apprise him of the date on which the trial transcript was filed and the fact that he had 180

days from that date to file a petition for post-conviction relief challenging the ineffectiveness of his trial counsel. This argument is analytically separate from the issue of whether petitioner's first appellate counsel was obligated to file such a petition. Moreover, this issue is also separate from the issue of whether petitioner had a constitutional right to the effective assistance of counsel in a collateral proceeding. Nevertheless, as we discuss below, because petitioner's claim of the ineffective assistance of trial counsel had arguable merit and could be raised only in a collateral proceeding, he would have been afforded the assistance of counsel under Ohio law and practice as well as the Sixth Amendment.

## DISCUSSION

We begin by observing that it is common ground that, unless petitioner can show cause for his failure to file a petition for post-conviction relief in Ohio based on the failure of his trial counsel to properly advise him to take the plea that was offered, the claim is procedurally forfeited. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).[1] It is also common ground that "an attorney's errors during an appeal on direct review may provide cause to excuse a procedural default; for if the attorney appointed by the State to pursue the direct appeal is ineffective, the prisoner has been denied fair process and the opportunity to comply with the State's procedures and obtain an adjudication on the merits of his claims." *Martinez v. Ryan*, 132 S. Ct. 1309, 1317 (2012).

"The proper measure of attorney performance remains simply reasonableness under prevailing professional norms. [The Supreme Court has long] recognized that [p]revailing norms of practice as reflected in American Bar Association standards and the like . . . are guides to determining what is reasonable . . . ." *Padilla v. Kentucky*, 559 U.S. 356, 366-67 (2010) (internal citations and quotations omitted). The same is

---

[1]A showing of prejudice is also normally required to avoid a procedural forfeiture. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). We focus here on the cause of the alleged procedural default because petitioner was deprived of his right to a post-conviction proceeding made available by Ohio law. Such a proceeding was the only way in which petitioner could challenge the effectiveness of his trial counsel. Moreover, he has adequately alleged that there is a reasonable probability that, but for appellate counsel's failure, he would have timely filed a petition for post-conviction relief. *See Roe v. Flores-Ortega*, 528 U.S. 470, 483-84 (2000).

equally true of an agent's obligations to his principal under the law of agency. *See e.g.*, *Maples v. Thomas*, 132 S. Ct. 912, 924 (2012). "Although they are only guides, and not inexorable commands, these standards may be valuable measures of the prevailing professional norms of effective representation . . . ." *Padilla v. Kentucky*, 559 U.S. 356, 366-67 (2010) (internal citations and quotations omitted).

Under well-settled agency law, "an agent is subject to a duty to use reasonable efforts to give his principal information which is relevant to affairs entrusted to him and which, as the agent has notice, the principal would desire to have and which can be communicated without violating a superior duty to a third person." Restatement (Second) of Agency § 381 (1958). In the present case, Mr. Long was aware of the fact that petitioner had turned down a potentially favorable plea offer in a case in which "the state had a very strong case at trial," and, in his opinion, petitioner was a "proverbial 'fish in a barrel.'" R. 8-1, Letter from Stephen D. Long to Matthew Gunner (Aug. 17, 2006) at 106 (Page ID #154). Moreover, petitioner's mother had attempted to raise the issue of the circumstances surrounding the rejection of the plea offer with Mr. Long. Surely, Mr. Long knew or had reason to know that petitioner would have desired to have Mr. Long communicate to him the time constraints for filing post-conviction relief challenging the effectiveness of his trial counsel.

Nor is it relevant that the information related to a possible proceeding that Mr. Long would not have been obligated to pursue. Comment *a* to § 381 Restatement (Second) of Agency is particularly apposite here. The comment observes that "a person whose authority is only to collect a debt *and not to bring action upon it* may obtain information that in order to collect the debt it is necessary to take immediate legal steps, as by attachment. In this situation, the agent's duty is to communicate the information in order that the principal may choose what he will do." Restatement (Second) of Agency § 381, Comment *a* (1958) (emphasis added). Mr. Long was retained to challenge the judgment of conviction on appeal. The only viable issue that was available –the ineffective assistance of trial counsel– had to be brought in a separate proceeding, and the timing of that proceeding was integrally related to the filing of the transcript on

direct appeal.   Mr. Long knew or should have known that this proceeding had to be brought within 180 days of the date on which the trial transcript was filed with the Ohio Court of Appeals, and he also knew that his client would surely have not known when the trial transcript was filed or of the necessity to take immediate legal steps.  Under these circumstances, just as the debt collector was obligated to inform his principal of the necessity to take immediate legal steps to collect the debt, even though he was not obligated to take those legal steps, Mr. Long was obligated to communicate comparable information to petitioner.[2]

We need not here rely only on hornbook agency law to reject the premise that a lawyer retained to represent a defendant in a particular proceeding has no obligation to apprise his client of information directly "relevant to the affairs entrusted to him and which, as the agent has notice, the principal would desire to have."   Restatement (Second) of Agency § 381 (1957).  We have held that "[t]he Constitution requires that counsel make objectively reasonable choices, and must do so not only during the legal proceeding for which the counsel represents the client, but also after the judicial proceeding has concluded in determining whether an appeal should be filed."  *Smith v. State of Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 433-34 (6th Cir. 2006) (internal quotations omitted).  Indeed, we there adopted and quoted from our holding in an earlier unpublished opinion, which held, in part, "that due to counsel's delay in informing defendant of the decision on his first appeal of right and counsel's fail[ure] to communicate to his client how to proceed with further appeals, it cannot fairly be said that [the defendant] truly had his first appeal of right."  *Paris v. Turner*, No. 97-4129, 1999 WL 357815, at *2-*3 (6th Cir. May 26, 1999).  Likewise ABA Model Rule of Professional Conduct 1.3, Comment (1996) provides: "[I]f a lawyer has handled a judicial or administrative proceeding that produced a result adverse to the client but has not been specifically instructed concerning pursuit of an appeal, the lawyer should

---

[2]Not only did Mr. Long fail to inform Gunner of the deadline and the need to file a petition for collateral review, but also this failure to do so actually disarmed Gunner.  Just like the petitioner in *Maples v. Thomas*, 132 S. Ct. 912, 927 (2012), Gunner was unaware that he had to fend for himself in order to protect invaluable legal rights.  *See id*. at 924 (noting that a prisoner should not "be faulted for failing to act on his own behalf when he lacks reason to believe his attorney[] of record, in fact, [is] not representing him").

advise the client of the possibility of appeal before relinquishing responsibility for the matter."

Significantly, we observed in *Smith* that the Supreme Court has applied this standard to hold that trial counsel has a constitutional duty to consult with clients about filing an appeal after the trial proceedings have concluded "when there is reason to think either (1) that a rational defendant would want to appeal . . ., or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Smith*, 463 F.3d at 434 (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000)). More specifically, the Supreme Court held in *Roe* that, where either of these two circumstances are met, an attorney is required to advise the defendant "about the advantages and disadvantages of taking an appeal" and to make "a reasonable effort to discover the defendant's wishes." *Roe*, 528 U.S. at 471. Such advice was particularly critical because the failure of counsel to provide it "arguably led not to a judicial proceeding of disputed reliability, but rather to the forfeiture of [the appellate] proceeding itself." *Id.* at 483. Indeed, in the seminal case defining the obligations of a defense attorney, the Supreme Court held that, among the "more particular duties" that derive from "counsel's function as assistant to the defendant" are the "duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Surely, the date of an event on direct appeal that triggers the time for the filing of a post-conviction petition constitutes such an important development.

Nor do we find persuasive the argument that the advice Mr. Long failed to provide related to a proceeding "for which there is no right to an attorney under the Constitution." R. 23, Mem. of Op. and Order at 12 (Page ID #392); *Gunner*, 2013 WL 774154, at *7. While the Supreme Court has held that, as a general matter, a defendant may not be entitled to the assistance of counsel in a collateral proceeding, when an initial-review collateral proceeding is the first designated proceeding for a prisoner to raise a claim of ineffective assistance at trial, this circumstance "may justify an exception to the constitutional rule that there is no right to counsel in collateral

proceedings." *Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012). In holding that an attorney's errors on direct appeal may provide cause to excuse a procedural default, the Supreme Court observed that, "[w]here, as here, the initial-review collateral proceeding is the first designated proceeding for a prisoner to raise a claim of ineffective assistance at trial, the collateral proceeding is in many ways the equivalent of a prisoner's direct appeal as to the ineffective-assistance claim." *Id.* at 1317. The Supreme Court further explained that "[t]his is because the state habeas court looks to the merits of the clai[m] of ineffective assistance, no other court has addressed the claim, and defendants pursuing first-tier review . . . are generally ill equipped to represent themselves because they do not have a brief from counsel or an opinion of the court addressing their claim of error." *Id.* (internal quotations and citations omitted).

Moreover, while the Supreme Court acknowledged that there were "sound reasons for deferring consideration of ineffective-assistance-of-trial-counsel claims until the collateral-review stage, . . . this decision is not without consequences for the State's ability to assert a procedural default in later proceedings." *Id.* at 1318. Indeed, in language directly applicable to this case, the Supreme Court held that, "[b]y deliberately choosing to move trial-ineffectiveness claims outside of the direct-appeal process, where counsel is constitutionally guaranteed, the State significantly diminishes prisoners' ability to file such claims. It is within the context of this state procedural framework that counsel's ineffectiveness in an initial-review collateral proceeding qualifies as cause for a procedural default." *Id.* at 1318.[3] This is a complete answer to the district court's argument that petitioner cannot complain of Mr. Long's failure to advise him of the filing deadline for an initial-review collateral proceeding because that proceeding is one "for which there is no right to an attorney under the Constitution." R. 23, Mem. of Op. and Order at 12 (Page ID #392); *Gunner v. Welch*, 3:09CV03009, 2013 WL 774154, at *7 (N.D. Ohio Feb. 28, 2013).

---

[3]Subsequently, in *Trevino v. Thaler*, 133 S.Ct. 1911, 185 (2013), the Supreme Court broadened the reach of *Martinez*, holding that its rule also applies where, although state procedural law may permit defendants to raise ineffective-assistance claims on direct appeal, a state's "procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." *Id.* at 1921.

Nor would there have been any merit to the argument even before the holding in *Martinez*. While a defendant may not be able to complain of the failure of counsel to file an application for relief to which the Constitution did not entitle him, *Wainwright v. Torna*, 455 U.S. 586, 587 (1982), that is an altogether different question from whether a defendant can complain about the failure of counsel to advise him of relief that may be available to him or of the necessity to proceed expeditiously if he wishes to obtain such relief.

The issue of the Sixth Amendment aside, petitioner would have very likely been provided with the assistance of counsel under Ohio law and practice. Thus, as the district court recognized, an Ohio prisoner will be provided with post-conviction counsel "where (1) the postconviction court determines that the petitioner's allegations warrant an evidentiary hearing, and (2) counsel determines that the petitioner's allegations have 'arguable merit.'" *Gunner,* 2013 WL 774154, at \*10. Significantly, at the time the 180-day filing deadline was enacted, it was the practice of the Legal Division of the Office of the Ohio Public Defender to review the applications of non-capital case inmates seeking post-conviction relief. Ohio Legis. Budget Office, Fiscal Note & Local Impact Statement, S.B. 4, 121st Sess., at 7 (1995). "Staff attorneys [would] conduct a merit review of each case." *Id.* "One attorney [was] generally assigned to review a [post-conviction relief] petition, although that attorney may require assistance from a paralegal, an investigator and/or a secretary. The length of time required to complete the review varie[d] with the complexity of the case, but can be anything from a few hours upwards, with an average of approximately five hours." *Id*. Those petitions found to have "arguable merit" are then litigated by the office. *Id*.[4]

While petitioner did not file a post-conviction motion, it would have been futile to do so because the 180-day period in which to file such a petition had long since run

---

[4]The document from which we have quoted was prepared in 1995 to advise the Ohio General Assembly of the fiscal impact of the 180-day filing deadline on the judicial branch and those associated with the prosecution and defense of criminal cases. There is no indication that the practice has changed since then. On the contrary, the website of the Office of the Ohio Public Defender's indicates that it has not changed. *Legal Division – Appeals and Post-Conviction Section*, Office of the Ohio Public Defender, http://www.opd.ohio.gov/Legal/Legal_Main.htm (last visited Feb. 27, 2014).

as a direct consequence of the failure of his appellate counsel to provide him with relevant information.  This failure amounted to ineffective assistance of appellate counsel and thus constitutes sufficient cause to excuse the procedural default that would otherwise subject the petition for habeas corpus to dismissal.

## CONCLUSION

We **REVERSE** the district court's dismissal of the petition for a writ of habeas corpus and **REMAND** for consideration of the petition on the merits.