RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 21a0033p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

IN RE: JAMES HANNA,

                            *Movant.*        No. 19-3881

─────────────────

On Motion for Leave to File a Second or Successive
Habeas Corpus Petition and On Motion to Remand.

United States District Court for the Southern District of Ohio at Dayton.
No. 3:19-cv-00231—Thomas M. Rose, District Judge.

Decided and Filed: February 11, 2021

Before: SILER, MOORE, and CLAY, Circuit Judges.

─────────────────

## COUNSEL

**ON MOTION FOR LEAVE TO FILE A SECOND OR SUCCESSIVE HABEAS CORPUS PETITION AND ON MOTION TO REMAND:** Paul R. Bottei, Allen L. Bohnert, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Columbus, Ohio, for Movant. **ON RESPONSE:** Stephen E. Maher, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Respondent.

     The court delivered an order. MOORE, J. (pp. 8–14), delivered a separate dissenting opinion.

─────────────────

## ORDER

─────────────────

     James Hanna, an Ohio death-row prisoner represented by counsel, has filed two motions. He requests leave to file a second or successive 28 U.S.C. § 2254 habeas corpus petition. *See* 28 U.S.C. § 2244(b)(3)(A). He also moves the Court to remand his pending petition to the district court, arguing that his second-in-time petition is not successive such that his claims must meet the requirements of § 2244(b). We deny both motions.

Hanna was convicted of aggravated murder and sentenced to death.  He exhausted direct-appeal and state postconviction remedies, then filed a federal habeas corpus petition, which the district court denied and dismissed with prejudice.  *Hanna v. Ishee*, No. C-1:03-cv-801, 2009 WL 485487 (S.D. Ohio Feb. 26, 2009), *aff'd*, 694 F.3d 596 (6th Cir. 2012), *cert. denied sub nom. Hanna v. Robinson*, 571 U.S. 844 (2013).  We specifically rejected Hanna's claim that he was deprived of effective assistance in mitigation because his counsel failed to present a psychologist to testify as to how organic neurological defects and a troubled childhood, in combination with lifelong incarceration, contributed to the aggravated murder.

Hanna returned to the district court on August 5, 2019 and filed the federal habeas corpus petition now before us.  It raises four claims, all alleging that counsel ineffectively assisted Hanna in the penalty phase:  (A) counsel failed to present neuroimaging evidence; (B) counsel failed to present mitigating evidence that Hanna suffered from severe mental illnesses at the time of the offense (post-traumatic stress disorder, major depression, and borderline personality disorder) caused by severe sexual abuse and complex trauma; (C) counsel failed to present mitigating evidence that Hanna has, and had at the time of the offense, a serious mental disorder caused by brain damage; and (D) counsel's errors, combined, deprived Hanna of effective assistance in the penalty phase and of a fair and reliable sentencing hearing.  The magistrate judge concluded that the petition was a successive petition, which may not be filed without this Court's permission.  28 U.S.C. § 2244(b)(3)(A).  He ordered the case transferred here for that permission.  Hanna appealed, and the district judge overruled Hanna's objections, adopted the magistrate judge's transfer order, and transferred the case.  Once here, Hanna filed the two motions aforementioned:  the § 2244 motion seeking leave to file a successive petition and the motion to remand the case.

Hanna argues, and the dissent agrees, that § 2244, which governs the finality of federal habeas proceedings, does not apply in this case.  Hanna concedes that his proposed petition is the second federal habeas corpus petition he has filed and, thus, second in time, but he argues that it is not "second or successive" in the § 2244 sense.  Citing *In re Bowen*, 436 F.3d 699, 704 (6th Cir. 2006), he argues that "a second-in-time petition is a 'second or successive' petition only if it constitutes an 'abuse of the writ.'"  He contends that his petition does not abuse the writ.

According to him, his new claims could not have been raised in his first petition because his previous federal habeas counsel suffered a conflict of interest that prevented their raising the claims—hence § 2244 does not apply, he needs no permission to file, and his proposed petition should be remanded to the district court for treatment as a first petition.

As an initial matter, the abuse-of-the-writ doctrine is no help to Hanna because he raises claims that were presented in the prior petition. The abuse-of-the-writ doctrine "concentrate[s] on a petitioner's acts to determine whether he has a legitimate excuse for failing to raise a claim at the appropriate time." *McCleskey v. Zant*, 499 U.S. 467, 490 (1991). It is not applicable here because Hanna's claims of ineffective assistance in mitigation relating to his brain damage and history of abuse were raised in the previous petition.

Moreover, the abuse-of-the-writ doctrine is applied in light of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2241 *et seq.*, the relevant statute. "AEDPA modifies those abuse-of-the-writ principles and creates new statutory rules under § 2244(b)." *Magwood v. Patterson*, 561 U.S. 320, 337 (2010). If the petitioner's claims fall within a scenario addressed by § 2244, the petition is successive and must satisfy § 2244(b). *See In re Wogenstahl*, 902 F.3d 621, 627–28 (6th Cir. 2018) (per curiam).

The current petition is a successive petition and must be dismissed. "A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed." 28 U.S.C. § 2244(b)(1). This Court previously rejected Hanna's claims that his counsel were ineffective for failing to present certain experts, including a psychologist, who specifically "could have testified that the stresses of lifelong incarceration, compounded with his organic neurological defects and troubled childhood, directly contributed to the attack." *Hanna*, 694 F.3d at 617. Accordingly, Hanna "seeks to present claims that have already been adjudicated in a previous petition," and "AEDPA denies federal courts the jurisdiction to adjudicate such a petition" under § 2244(b)(1). *Post v. Bradshaw*, 422 F.3d 419, 425 (6th Cir. 2005).

The dissent concludes that Hanna's current claims are new because brain damage and Hanna's history of sexual abuse were not the focus of his first § 2254 petition or properly

presented in the context of his mental illnesses.  That Hanna "seeks to supplement with new evidence his claims" that counsel were ineffective at the penalty phase of trial for failing to properly present evidence of his organic brain damage and sexual abuse "would be representing already presented claims."  *Moreland v. Robinson*, 813 F.3d 315, 325 (6th Cir. 2016) (citing *Gonzalez v. Crosby*, 545 U.S. 524, 531 (2005)).  The dissent's reference to *Wogenstahl*, where the petitioner sought to bring a completely new *Brady* claim, is therefore distinguishable.  *See In re West*, 402 F. App'x 77, 79 (6th Cir. 2010) (holding that claim that counsel was ineffective "for failing to present *additional* pieces of evidence that—like the evidence we already considered— painted [the petitioner] as a troubled individual" was not new).  Hanna's petition must be dismissed under § 2244(b)(1).

Hanna has also not shown that he meets the requirements for consideration of a second or successive petition under § 2244(b)(2).  Hanna does not claim that his new petition relies on a new rule of constitutional law under § 2244(b)(2)(A), but it allegedly depends on a factual predicate—the scenario addressed by § 2244(b)(2)(B).  The dissent's contention that Hanna's petition is not based on a new factual predicate is belied by the petition itself, which seeks "an evidentiary hearing to enable James Hanna to prove the facts asserted in this petition and to prove any and all facts required . . . to prove his entitlement to relief on the merits . . . ."  Assuming that the "factual predicate" of Hanna's current petition supports new claims and could not have been discovered previously, which is far from clear, all the claims at issue relate to trial counsel's representation in mitigation.  28 U.S.C. § 2244(b)(2)(B)(i).  Mitigation evidence categorically does not meet § 2244(b)(2)(B)(ii)'s requirement that the new facts establish a petitioner's actual innocence.[1]

Even if Hanna had not previously raised these claims under § 2244(b)(1), and they were not squarely foreclosed by § 2244(b)(2), he has not shown that the abuse-of-the-writ doctrine applies.  "[T]his not-second-or-successive exception is generally restricted to two scenarios,"

---

[1]The dissent argues that because the factual predicate of Hanna's claim is not new and the facts underlying his claim do not concern his guilt, this petition is outside the scenario contemplated by § 2244(b)(2)(B).  However, this analysis rests upon an unduly limited view of § 2244(b)(2)(B), which requires all second or successive petitions based on a factual predicate to be founded on newly discovered facts and go to establishing a petitioner's actual innocence.  *See In re Caldwell*, 917 F.3d 891, 894 (6th Cir. 2019).  That Hanna's claims fail to meet either of these requirements does not justify bypassing the statute.

neither of which is present here. *In re Coley*, 871 F.3d 455, 457 (6th Cir. 2017) (per curiam). Those scenarios are when (1) the claim was not ripe when the earlier petition was filed and (2) where the earlier petition was dismissed for failure to exhaust. *Id.* The habeas statute's limits on second or successive habeas petitions also do not apply to challenges to intervening judgments. *Magwood*, 561 U.S. at 323–24. There is no intervening judgment in this case.

Instead, Hanna argues that his petition is not an abuse of the writ because counsel from the same office, the Ohio Public Defender, represented him in both his state postconviction proceedings and initial federal habeas case. He asserts that this continuity of counsel constituted a conflict of interest which prevented him from previously raising the instant claims because it would have required members of the Ohio Public Defender to argue that they and their colleagues had been ineffective in a prior proceeding. Neither Hanna nor the dissent cite any case where we have found that mere continuity of counsel constitutes a conflict of interest entitling a petitioner to file a second or successive petition under the abuse-of-the-writ doctrine.

We also note that the conflict Hanna has attributed to the Ohio Public Defender due to continued representation "is merely hypothetical . . . ." *Moss v. United States*, 323 F.3d 445, 464 (6th Cir. 2003). There is no evidence that "a conflict of interest actually affected the adequacy of his representation . . . ." *Cuyler v. Sullivan*, 446 U.S. 335, 349 (1980). Hanna has not presented any specific instances where the continuity of counsel "adversely affected his lawyer's performance," but rather merely suggests "the possibility of conflict . . . ." *Id.* at 350. Hanna has also failed to show that he was prejudiced by counsel's failure to raise the claims presented in the new petition. *See Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 844 (6th Cir. 2017) (recognizing that prejudice is presumed only in cases where actual conflict of interest was attributable to multiple concurrent representation).

Additionally, Hanna's filings fail to acknowledge that his claim that members of the Ohio Public Defender suffered from a conflict of interest was presented to and rejected by the district court in his initial habeas case. After certiorari had been denied in that suit and the Supreme Court decided *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013), which held that ineffective assistance of state postconviction counsel can excuse procedural default when a petitioner cannot raise claims of ineffective assistance of trial counsel on direct

appeal, Hanna sought to have new counsel appointed.  He raised the same arguments that he does here—that his attorneys from the Ohio Public Defender were conflicted because they would not be willing to criticize their colleagues who had represented him in the state postconviction proceedings.  The district court considered and rejected this argument twice, finding that members of that office would be perfectly capable of reviewing the prior work of their colleagues for mistakes and that there was no actual conflict of interest.  *See Gillard v. Mitchell*, 445 F.3d 883, 891–92 (6th Cir. 2006) (rejecting habeas claim when trial court "fully inquired into the possible conflict of interest . . . , and the Ohio Supreme Court recognized only the possibility of a conflict of interest").  In failing to acknowledge this prior determination, Hanna provides us no basis to conclude that it was made in error.  *See United States v. Kilpatrick*, 798 F.3d 365, 377 (6th Cir. 2015).

Hanna's new petition explicitly recognizes that his previous counsel were bound by Ohio Rule of Professional Conduct 1.7 to consider whether their continued representation would have created "a *substantial* risk that [their] ability to consider, recommend, or carry out an appropriate course of action . . . will be materially limited by . . . [their] own personal interests."  Prior to the denial of certiorari in his own case and the Supreme Court's decisions in *Martinez* and *Trevino*, there is no indication that counsel from the Ohio Public Defender harbored any concern that their representation of Hanna was compromised by personal interest.  *See Mickens v. Taylor*, 535 U.S. 162, 168 (2002) (objection to conflicted representation must be timely).  Hanna's claim that he was not aware of the potential conflict until after the conclusion of the first habeas case is also unavailing.  In fact, as the new petition recognizes, continuity was cited by Hanna as a reason in favor of appointing counsel in the initial federal suit.  *See McFarland v. Yukins*, 356 F.3d 688, 701 (6th Cir. 2004) (observing that while a defendant has an interest in conflict-free counsel, as well as "to proceed with counsel of [his] own choice," he "cannot have it both ways by asking for reversal or habeas corpus on the basis of representation that he or she acceded to during trial").

Moreover, even if the current petition was not an abuse of the writ, a federal habeas court could not consider Hanna's claims because they are procedurally defaulted or have been adjudicated in an unchallenged state court decision.  Both Hanna and the dissent rely on the

Supreme Court's decisions *Martinez* and *Trevino*. However, even now, Hanna, with new counsel, does not offer a cognizable argument that his state postconviction counsel were ineffective since it is well-established that simply not raising a particular argument does not constitute ineffective assistance. *See Hand v. Houk*, 871 F.3d 390, 410 (6th Cir. 2017) ("Mere failure to raise a potentially viable claim is not enough, as [a]ppellate counsel need not raise every non-frivolous claim on direct appeal." (alteration in original) (internal quotation marks and citation omitted)). Additionally, the application of *Martinez* or *Trevino* is squarely foreclosed in this case because Hanna "brought a claim of ineffective assistance of trial counsel [at sentencing] on direct appeal, and the Ohio Supreme Court adjudicated that claim on the merits." *Moore v. Mitchell*, 848 F.3d 774, 775 (6th Cir. 2017). In particular, as the new petition recognizes, Hanna argued on direct appeal that trial counsel failed to adequately present evidence of child abuse. *State v. Hanna*, 767 N.E.2d 678, 702–03 (Ohio 2002). His claim was rejected, and his sentence affirmed. The record reviewed by the Ohio Supreme Court contained evidence of sexual abuse and, as the petition also acknowledges, "[n]europhysical testing [that] showed . . . frontal lobe impairment in the brain, and dysfunction in the right posterior aspect of his brain." *Id.* at 705. Hanna presents no claims of error sufficient to entitle him to relief under § 2254(d).

Hanna also argues that not treating his second-in-time petition as a first petition would violate his rights to due process and equal protection, suspend the writ of habeas corpus, and violate 18 U.S.C. § 3599. He does not adequately develop these arguments, however, thereby forfeiting them. *See United States v. Layne*, 192 F.3d 556, 566–67 (6th Cir. 1999).

We **DENY** Hanna's motion to remand and **DENY** him permission to file the proposed petition.

---

**DISSENT**

---

KAREN NELSON MOORE, Circuit Judge, dissenting. I respectfully dissent. To me, Hanna's § 2254 petition—raising a new claim of ineffective assistance of trial counsel that he could not have raised in his earlier petition—though second in time, is not "second or successive." Accordingly, I would grant Hanna's motion to remand because the district court had jurisdiction to consider Hanna's § 2254 petition without this court's prior authorization.

As the majority notes, this is not Hanna's first time mounting a collateral challenge to his Ohio death sentence for the murder of Peter Copas, Hanna's former cellmate. With the Ohio Public Defender representing him, Hanna first sought postconviction relief in state court. Then, when state postconviction proceedings failed to result in relief, Hanna—still represented by the Ohio Public Defender—brought a § 2254 petition in district court, asserting ten grounds for relief. This, too, proved unsuccessful: the district court denied Hanna's § 2254 petition, *Hanna v. Ishee*, No. 1:03-CV-801, 2009 WL 485487 (S.D. Ohio Feb. 26, 2009), this court upheld that decision, *Hanna v. Ishee*, 694 F.3d 596, 601 (6th Cir. 2012), and the Supreme Court denied certiorari, *Hanna v. Robinson*, 571 U.S. 844 (2013).

Hanna currently seeks to pursue a new § 2254 petition in the district court. Now represented by the Federal Public Defender, Hanna asserts that his trial counsel was ineffective during the mitigation phase of his capital trial for failing to present evidence of brain damage, mental illnesses, and a history of being sexually abused and assaulted. Hanna argues that although he procedurally defaulted this claim by failing to raise it during his state postconviction proceedings, the default should be excused under *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013), because his state postconviction counsel was ineffective in failing to raise it. Similarly, Hanna argues that his new petition, though second in time, is not second or successive because he could not have raised his new claim of ineffective assistance of trial counsel in his first § 2254 petition, which would have required his counsel to argue their own ineffectiveness under *Martinez* and *Trevino*, a plain conflict of interest. I agree.

"The Supreme Court has made clear that not every numerically second petition is 'second or successive' for purposes of [the Antiterrorism and Effective Death Penalty Act ("AEDPA")]." *In re Bowen*, 436 F.3d 699, 704 (6th Cir. 2006) (citing *Slack v. McDaniel,* 529 U.S. 473, 487 (2000); *Stewart v. Martinez-Villareal,* 523 U.S. 637 (1998)). To distinguish truly second or successive petitions from those that are merely second in time, courts apply the "abuse of the writ" doctrine, "including those decisions that predated AEDPA." *Id.*; *In re Wogenstahl*, 902 F.3d 621, 627 (6th Cir. 2018) (per curiam). "Under the abuse of the writ doctrine, a numerically second petition is 'second' when it raises a claim that could have been raised in the first petition but was not so raised, either due to deliberate abandonment or inexcusable neglect." *Bowen*, 436 F.3d at 704. Though simply stated, the abuse-of-the-writ doctrine refers "to a complex and evolving body of equitable principles informed and controlled by historical usage, statutory developments, and judicial decisions." *McCleskey v. Zant*, 499 U.S. 467, 489 (1991). Thus, although AEDPA does not define "second or successive," and pre-AEDPA abuse of the writ cases inform its application, the abuse of the writ doctrine cannot be used to undermine the Act's text: if the claims asserted in a second-in-time petition "fall within the scenario[s] addressed by" § 2244(b)—new rules of constitutional law and newly discovered evidence of innocence—then the petition is deemed to be second or successive. *Wogenstahl*, 902 F.3d at 627.

As an initial matter, although I agree with my colleagues that a claim must not have been raised previously for the abuse of the writ doctrine to apply, I disagree with their conclusion that Hanna is recycling an already litigated claim of ineffective assistance of trial counsel. Hanna's new petition alleges that his trial counsel was ineffective in failing to obtain and present neuroimaging of Hanna's brain to demonstrate organic defects, and to present evidence of Hanna's mental illnesses. Hanna made no such claim in his first federal habeas petition, which faulted trial counsel's failure to present evidence of prison culture, a prison employee's positive experiences with Hanna, the requirements for placing persons in maximum security prisons, and trial counsel's failure to prepare Hanna's mitigation psychologist to testify to the impact prison life had had on Hanna. Although Hanna's counsel made some oblique references to Hanna's mental illnesses and possible brain damage on appeal after the district court dismissed his first § 2254 petition—references that made their way into this court's opinion upholding the district

court's dismissal—the petition itself focuses almost exclusively on counsel's failure to invoke prison culture as a mitigating explanation for why Hanna would have killed Copas. Furthermore, although both Hanna's first and current § 2254 petitions reference his trial counsel's failure to investigate and present evidence of sexual abuse suffered by Hanna, the current petition raises those facts in the context of explaining Hanna's mental illnesses, consistent with the rest of his claim of ineffective assistance of counsel. In short, Hanna's new claim of ineffective assistance of counsel is just that, new. *See Wogenstahl* 902 F.3d at 628, n.2 (second *Brady* claim was distinct from first where it involved different evidence that undermined distinct aspects of the trial); *cf. Moreland v. Robinson*, 813 F.3d 315, 325 (6th Cir. 2016) (same claim where both alleged trial counsel's ineffectiveness for failing to present an expert to challenge blood evidence).

Furthermore, I disagree with my colleagues' conclusion that Hanna's new claim of ineffective assistance of trial counsel falls within the scenarios addressed by § 2244(b) and so must be deemed second or successive. First, Hanna's petition does not rely on a "new rule of constitutional law." 28 U.S.C. § 2244(b)(2)(A). Hanna's claim of ineffective assistance of trial counsel is straightforward, relying on the well-established cause and prejudice standard for ineffective assistance claims from *Strickland v. Washington*, 466 U.S. 668 (1984). Although Hanna invokes *Martinez* and *Trevino* to excuse his failure to raise his claim earlier, the Supreme Court was explicit that the rules adopted in those cases are equitable. In an "equitable ruling," the Supreme Court in *Martinez* established a limited exception to the general rule that attorney negligence in postconviction proceedings cannot establish cause and prejudice to excuse a procedural default. 566 U.S. at 16. The exception applies only where the petitioner defaulted a "substantial" claim of ineffective assistance of trial counsel because of postconviction counsel's own ineffectiveness in an "initial" review proceeding. *Trevino*, 569 U.S. at 423 (quoting *Martinez*, 566 U.S. at 14). *Trevino* extended this equitable exception to cover not just cases where the state required claims of ineffective assistance of trial counsel to be raised in postconviction proceedings—the circumstances involved in *Martinez*—but also cases where the state makes it unlikely that a petitioner would have a "meaningful opportunity" to raise the claim on direct appeal. 569 U.S. at 429. Second, this is not a claim predicated on newly "discovered" evidence, 28 U.S.C. § 2244(b)(2)(B)(i), insofar as Hanna's trial counsel's actions and inactions,

as well as Hanna's potential brain damage, mental illnesses, and history of being sexually assaulted were all known to Hanna from the outset. Although the evidence of Hanna's post-conviction counsel's conflict is new, this evidence is not the basis for Hanna's claim—he merely offers it to overcome his procedural default. Moreover, the facts underlying Hanna's claim do not speak to whether a "reasonable factfinder would have found [Hanna] guilty of the underlying offense." 28 U.S.C. § 2244(b)(2)(B)(ii). Rather, the facts underlying Hanna's claim concern his culpability, relevant to his punishment, but not to his guilt. In short, the new claim that Hanna hopes to pursue is outside the scope of the scenarios contemplated by § 2244(b).

Because Hanna's claim of ineffective assistance of counsel is new, and because it falls outside the scope of the scenarios contemplated by § 2244(b), the abuse of the writ doctrine informs whether his petition is second or successive or merely second in time. Although, as the majority recognizes, Hanna's claim of ineffective assistance of trial counsel "do[es] not fall within any of the situations that have been recognized under the abuse-of-the-writ doctrine as making a petition second-in-time but not second or successive" post-AEDPA, *Wogenstahl*, 902 F.3d at 627,[21] I believe that the reasoning of *Martinez* and *Trevino* compels the conclusion that Hanna's petition is not an abuse of the writ and so is not second or successive.

Although *Martinez* and *Trevino* do not address the abuse of the writ doctrine, the equitable foundation of those cases is applicable to an abuse of the writ analysis because of the close connection between the abuse of the writ and procedural default doctrines. In *McCleskey*, a pre-AEDPA case, the Supreme Court expressly held that the cause and prejudice standard for procedural defaults also "applies to determine if there has been an abuse of the writ through inexcusable neglect." 499 U.S. at 493. This conclusion, the Court reasoned, resulted "from the unity of structure and purpose in the jurisprudence of state procedural defaults and abuse of the writ." *Id.* Indeed, "[t]he doctrines of procedural default and abuse of the writ implicate nearly identical concerns flowing from the significant costs of federal habeas corpus review." *Id.* at

---

[1]Specifically, Hanna's new petition targets the same state court judgment as his first, Hanna did not raise the claims previously such that a federal court would have had the opportunity to decline to address them, and Hanna's claims were ripe at the time of his first § 2254 petition insofar as the predicate for the new claims—trial counsel's ineffectiveness—had already occurred. *See Wogenstahl*, 902 F.3d at 627–28.

490–91. Thus, "[a] federal habeas court's power to excuse these types of defaulted claims derives from the court's equitable discretion." *Id.* at 490.

In *Martinez* and *Trevino*, that equitable discretion counseled in favor of excusing procedural defaults in cases involving substantial claims of ineffective assistance of trial counsel that, because of the structure of the state's postconviction review procedures, should have been raised for the first time on collateral review but were not due to counsel's ineffectiveness. The equitable basis for that ruling was straightforward: "When an attorney errs in initial-review collateral proceedings, it is likely that no state court at any level will hear the prisoner's claim. . . . And if counsel's errors in an initial-review collateral proceeding do not establish cause to excuse the procedural default in a federal habeas proceeding, no court will review the prisoner's claims." *Martinez*, 566 U.S. at 10–11. Although other sorts of defaulted claims will generally have had at least one court consider the merits, the same cannot be said of claims of ineffective assistance of trial counsel that cannot be raised until state postconviction proceedings. *See id.* Indeed, "[a] prisoner's inability to present a claim of trial error is of particular concern when the claim is one of ineffective assistance of counsel" given that "[t]he right to the effective assistance of counsel at trial is a bedrock principle in our justice system." *Id.* at 12.

These principles apply forcefully where the same counsel represents the petitioner in their first federal habeas proceedings as represented them in their state postconviction proceedings. Although the federal petitioner could invoke *Martinez* and *Trevino* to excuse their failure to raise a substantial claim of ineffective assistance of trial counsel in state court, doing so would require counsel to argue that they were themselves ineffective in failing to raise the claim earlier. *See Martinez*, 566 U.S. at 17–18. A plain conflict of interest prevents counsel from making such an argument because it would pit the petitioner's interest in vigorously presenting the argument against counsel's interest in preserving their professional reputation, among other things. *See Christeson v. Roper*, 574 U.S. 373, 378–79 (2015); *Juniper v. Davis*, 737 F.3d 288, 290 (4th Cir. 2013) (requiring appointment of independent counsel in federal habeas proceeding to determine availability of any previously defaulted claims under *Martinez*). These circumstances implicate the same concerns addressed in *Martinez* and *Trevino*: the petitioner is no more able to raise their substantial claim of ineffective assistance of trial counsel in their first federal petition—due

to counsel's conflict of interest—than they were in their state postconviction proceedings—due to counsel's ineffectiveness. Thus, if counsel's conflict of interest does not excuse the failure to raise a claim of ineffective assistance of trial counsel in a first petition, "no court will review the prisoner's claims." *Martinez*, 566 U.S. at 11. The equitable reasoning of *Martinez* and *Trevino* counsels against such a result.

In sum, Hanna has persuaded me that a § 2254 petition is not second or successive where it raises a new claim of ineffective assistance of trial counsel and where, due to the petitioner having been represented by the same counsel in his state postconviction and § 2254 proceedings, a conflict of interest prevented the petitioner from raising that claim in an earlier petition. That rule favors a remand here. Susan Roche served as lead counsel for Hanna's state postconviction proceedings and then continued to represent Hanna when he filed his first § 2254 petition. A conflict of interest would have prevented Roche from raising a new claim of ineffective assistance of trial counsel in Hanna's first § 2254 petition because it would have implicated her own ineffectiveness in failing to raise the claim in Hanna's state postconviction proceedings. *See Christeson*, 574 U.S. at 378–79; *Juniper*, 737 F.3d at 290. Although other attorneys from the Ohio Public Defender's office were involved in Hanna's first § 2254 petition, Roche's conflict of interest would be imputed to them under the circumstances.[2] Moreover, *Trevino* applies to

---

[2]The extent to which conflicts of interest will be imputed within a public defender organization is a matter of some debate. *See, e.g.*, *United States v. Lech*, 895 F. Supp. 586, 591 (S.D.N.Y. 1995) (Sotomayor, J.). However, where, as here, the conflicted attorney has worked on the matter from which the conflict of interest arises with the attorneys to whom the conflict would be imputed (or the attorneys to whom the conflict would be imputed began their representation after the conflicted attorney ceased representing the petitioner but at a stage where it would be infeasible to raise the attorney's ineffectiveness), I would conclude that imputation is appropriate. *Cf. Houston v. Schomig*, 533 F.3d 1076, 1083 (9th Cir. 2008) (suggesting that imputation would apply to attorneys within the same public defender office). As a practical matter, I do not think that adopting my reasoning would preclude counsel from continuing to represent a petitioner in their federal habeas proceedings after representing them in their state postconviction proceedings. *See generally* David M. Barron, *Martinez Casts Doubt on State Postconviction and Federal Habeas Representation*, 27-Fall CRIM. JUST. 42 (2012) (proposing the use of an independent attorney to identify potential *Martinez* issues in such cases).

Insofar as the majority suggests that Hanna acquiesced to continued representation by the Ohio Public Defender with an awareness of the conflict of interest, I would disagree. There is no indication in the record that Hanna was aware of the conflict until the Supreme Court decided *Martinez* and *Trevino* and Hanna requested new counsel in the district court. That Hanna earlier requested the same counsel represent him in his first § 2254 proceedings does not suggest otherwise; it shows that Hanna saw there to be some benefit to continuous representation, but not that Hanna appreciated any attendant danger. *See United States v. Brock*, 501 F.3d 762, 772–73 (6th Cir. 2007), *abrogated on other grounds by Ocasio v. United States*, 136 S. Ct. 1423 (2016). Moreover, far from "failing to acknowledge" that the district court expressed skepticism about the asserted conflict, Maj. Op. at 6, Hanna's filings before this court refer us directly to those rulings and provide thorough arguments rebutting the

Ohio's procedural framework for claims of ineffective assistance of trial counsel given that such claims cannot be raised on direct appeal in Ohio where the predicate facts are not a part of the trial record (as is the case with Hanna's current claim). *See White v. Warden*, 940 F.3d 270, 277 (6th Cir. 2019), *cert. denied*, 140 S. Ct. 2826 (2020); *Gunner v. Welch*, 749 F.3d 511, 514 (6th Cir. 2014) ("A claim of ineffective assistance of counsel that is dependent on facts that are not part of the trial record cannot be raised on direct appeal. Instead, it must be raised in a post-conviction proceeding pursuant to Ohio Rev. Code § 2953.21."). Whether Hanna is otherwise able to overcome his procedural default under *Martinez* and *Trevino*—or whether he is otherwise unable to proceed because of the nature of the claims of ineffective assistance of trial counsel that he raised on direct appeal—are questions that I would leave for the district court to resolve in the first instance because they do not concern its jurisdiction to consider his new petition.

Because I would conclude that Hanna's new § 2254 petition is not second or successive, I would also conclude that the district court had jurisdiction to consider that petition without our prior authorization. Accordingly, I dissent from the majority's denial of Hanna's motion to remand. Hanna should have an opportunity to litigate his new claim of ineffective assistance of trial counsel—one that no court has yet passed upon—before Ohio puts him to death.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk

---

district court's reasoning. *See* Mot. Remand at 3–8; Mot. Remand, Att. 1 at 12–13 (Hanna's new § 2254 petition, filed as a substantive attachment to his remand motion). In any case, the district court granted Hanna new counsel, acknowledging that this court might view the conflict issue differently, and thus Hanna had little reason to complain about the district court's decisions. R. 158, *Hanna v. Bagley*, No. 03-cv-00801 (S.D. Ohio 2014) (Supp. Op. at 9) (Page ID #2921).